**Renee L. CUFFEE, Plaintiff,**

v.

**VERIZON COMMUNICATIONS, INC., Defendant.**

**Civil Action No. 10–cv–01748–AW.**

United States District Court, D. Maryland, Southern Division.

Dec. 20, 2010.

Thomas J. Gagliardo, The Gagliardo Law Firm, Silver Spring, MD, for Plaintiff.

Adam Harrison Garner, Elena D. Marcuss, McGuire Woods LLP, Baltimore, MD, for Defendant.

### Memorandum Opinion

ALEXANDER WILLIAMS, JR., District Judge.

Two related motions are pending before the Court: Defendant's motion to dismiss the original Complaint, Doc. No. 9, and Plaintiff's motion for leave to file an Amended Complaint, Doc. No. 20. The

Court has reviewed the entire record and finds that no hearing is necessary. *See* D. Mᴅ. Loᴄ. R. 105(6) (2010). For the reasons stated below, both motions will be denied, with the result that the Plaintiff's case will proceed on the basis of the original Complaint, not the Proposed Amended Complaint.

### I. FACTUAL & PROCEDURAL BACKGROUND

Except when otherwise stated, the following facts are drawn from the Proposed Amended Complaint. Plaintiff Renee Cuffee, a female, was hired as a consultant by Defendant Verizon Communications, Inc. ("Verizon") in June 1999.[1] During the course of her employment, she received several promotions, and by 2007, she was a Supervisor of Operations for the Virginia/West Virginia region and the lead sales consultant on the Sell One More campaign.

From approximately April 2008 until September 2008, Plaintiff was subjected to sexual advances from Tyrone Stephenson, the highest-level executive in Plaintiff's regional office. She continuously rejected the advances. Plaintiff contacted Tillmon Figgs, a security investigator with Verizon, for assistance. Figgs told Plaintiff that he had reported Stephenson's harassment to Verizon's Equal Employment Opportunity ("EEO") office and told her that he would ensure that Stephenson would no longer harass her. Approximately two months later, in August 2008, she learned from her immediate supervisor that she had been removed from her position as lead sales consultant on the Sell One More campaign.

During Plaintiff's employment with Verizon, she was involved in a romantic relationship with Charles Casteel, a male Veri-

---

1. Defendant claims that the Complaint incorrectly identifies the defendant, and that Plaintiff's actual employer is Verizon Services Corporation, not Verizon Communications, Inc.

The Court expects that the Parties will confer together and clarify this matter before the close of discovery.

zon executive. In early September 2008, she learned that she was pregnant with their child. Casteel tried to convince her to procure an abortion, which she refused due to health concerns. When Casteel realized that he would not be able to convince her to have an abortion, he had Figgs call Plaintiff and threaten her.

In November 2008, Figgs called Plaintiff to his office and threatened to have her terminated if she ever attempted to contact Casteel again. Plaintiff explained that she needed to contact him in order to deal with issues surrounding the pregnancy. Figgs told her that the pregnancy was irrelevant, and that if she called him again, he was certain that she would be terminated. He repeated several times that if she wanted to keep her job, she should never contact him. He also told her not to contact Verizon's EEO office.

In December 2008, she learned that she was being transferred from her current position as Supervisor of Operations for the Virginia/West Virginia region to Supervisor of Operations for the Maryland/Washington, DC region. As a result, she has suffered a reduction in pay and a diminishment in career-advancement opportunities. By contrast, Casteel was never forced to take a reduction in pay or position.

Although the Proposed Amended Complaint alleges that "Plaintiff has satisfied all of the administrative prerequisites to suit for this action," Doc. No. 20–2, she does not specifically attach the Charge of Discrimination ("Charge Letter") that she filed with the EEOC to the Complaint. However, Defendant attached the Charge Letter to its motion, *see* Doc. No. 9–4, and

Plaintiff has disputed neither its authenticity nor the appropriateness of considering the Charge Letter in the procedural posture of this case. Because the Complaint and the Proposed Amended Complaint refer to the administrative prerequisites for filing this action, and the crucial prerequisite is filing the Charge Letter with the EEOC, *see infra,* it is appropriate to consider it at the motion-to-dismiss stage.[2]

On September 14, 2009, the Equal Employment Opportunity Commission ("EEOC") received Plaintiff's Charge Letter. In a section of the letter with the caption, "DISCRIMINATION BASED ON (*Check appropriate box(es.)),*" Plaintiff checked the "SEX" box. Plaintiff did not check any other boxes, notably including "RETALIATION." Plaintiff indicated that the discriminatory actions took place between November 6, 2008 and [month illegible] 8, 2009, and Plaintiff checked a box indicating that the discriminatory events are "CONTINUING ACTION." Finally, Plaintiff described her complaint in the following way:

> I. I began working for the above employer on June 7, 1999, as a Consultant. My present position is a Supervisor. On November 6, 2008, I got into an argument with Charles Casteel, Jr., Director, about the pregnancy of our children. He was angry with me because I would [not] get an abortion. Later, that day, I was called to talk to Mr. Tillman Figgs, Security Specialist for the employer. He threatened my job status and told me to never contact Mr. Casteel again or I would be terminated. I did not agree with him and asked "what had I done". He told me he was just trying to

---

**2.** Ordinarily, when "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(d).

However, the Court "may also consider documents referred to in the complaint and relied upon by the plaintiff in bringing the action." *Wyckoff v. Maryland,* 522 F.Supp.2d 730, 734 (D.Md.2007).

save my job. I filed a complaint with the employer's EEO Officer, Gertrude Montgomery. An investigation was conducted. On May 18, 2009, Ms. Montgomery informed that my complaint was substantiated. Mr. Casteel had disciplinary action taken against him.

II. My employer has not given me a reason for the harassment and threats of my job.

III. I believe that I have been discriminated against because of my sex (female-pregnancy) in violation of Title VII of the Civil Rights Act of 1964, as amended, with respect to harassment.

Plaintiff filed the original Complaint before this Court on January 15, 2010, alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). The Complaint, like the Charge Letter, only presents facts relating to Casteel; it never mentions the sexual-harassment allegations against Stephenson. Defendant moved to dismiss the Complaint on the grounds that Plaintiff failed to exhaust her administrative remedies before the EEOC, because the claims presented in the Complaint differ from those contained in her EEOC Charge Letter. *See* Doc. No. 9. Plaintiff opposed Defendant's motion, Doc. No. 18, and also filed a motion for leave to file an Amended Complaint to supplement the allegations against Casteel, add new allegations against Stephenson, and add several new counts, Doc. No. 20.

## II. STANDARD OF REVIEW

■ Ordinarily, the Court should freely give leave to amend the Complaint. There are several exceptions, including when the amendment would be "futile." *HCMF Corp. v. Allen,* 238 F.3d 273, 276 (4th Cir.2001) (quoting *Edwards v. City of Goldsboro,* 178 F.3d 231, 242 (4th Cir.

1999)). Amendments are futile when "the proposed amendments could not withstand a motion to dismiss." *Perkins v. United States,* 55 F.3d 910, 917 (4th Cir.1995).

■ To withstand a motion to dismiss, the complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2). In its determination, the Court must "accept the well-pleaded allegations of the complaint as true," *Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and "must construe factual allegations in the light most favorable to the plaintiff," *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir.1999). The Court should not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Commrs.,* 882 F.2d 870, 873 (4th Cir.1989), "legal conclusion[s] couched as ... factual allegation[s]," *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst,* 604 F.2d 844, 847 (4th Cir.1979).

## III. ANALYSIS

Plaintiff seeks leave to amend the Complaint to allege three causes of action: (1) a hostile-environment sexual-harassment claim under Title VII and the Maryland Human Relations Act, MD.CODE ANN., STATE GOV'T, § 20-601, *et seq.* ("*MHRA*"), (2) a retaliation claim based on Title VII and the MHRA, and (3) intentional infliction of emotional distress. The Court holds that none of these claims would survive a motion to dismiss, and therefore denies Plaintiff's motion for leave to amend as futile. However, the Court holds that Plaintiff

has exhausted her administrative remedies regarding the discrimination claim raised in the original Complaint, and therefore will deny Defendant's motion to dismiss.

### A. Hostile–Environment Sexual Harassment

The first cause of action in the Proposed Amended Complaint is hostile-environment sexual harassment under Title VII and the MHRA. Although Plaintiff does not specifically state who the culprits are in the paragraphs dealing with that count, it appears from the statement of facts that the count is based on two sets of events: (1) the sexual advances of Stephenson, and (2) the threats and demotion that Plaintiff suffered as a result of her fallout with Casteel.

▆▆ Insofar as Plaintiff's hostile-environment claim is based on Stephenson's sexual advances, it must be dismissed for failure to exhaust administrative remedies. "Before a Title VII plaintiff can bring a formal suit, he must file an administrative charge" with the EEOC. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005). If the plaintiff eventually files suit in court, the complaint can only raise "claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir.1996). Sexual-harassment claims against Stephenson are too far removed from the claims raised in the Charge Letter, which only refers to discrete episodes of harassment and threats by Casteel and Figgs relating to Plaintiff's pregnancy. *Cf. Chacko*, 429 F.3d at 510 (" '[T]he EEOC

charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals.' " (quoting *Kersting v. Wal–Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir.2001))).

Plaintiff states, without supporting authority, that her claims under the MHRA are viable notwithstanding her deficient exhaustion of administrative remedies, because "there is no exhaustion requirement under the [MHRA]. . . ." Doc. No. 20 at 1. However, like Title VII, the MHRA does require that would-be plaintiffs first file a charge of discrimination with an enforcement agency. *See* MD.CODE ANN., STATE GOV'T, § 20–1004(c)(1) ("A complaint shall be filed [with the Maryland Commission on Human Relations] within 6 months after the date on which the alleged discriminatory act occurred."); § 20–1013(a) ("[A] complainant may bring a civil action against the respondent alleging an unlawful employment practice, if . . . the complainant initially filed a timely administrative charge or a complaint under federal, State, or local law alleging an unlawful employment practice by the respondent. . . ."); *Ragland v. A.W. Indus., Inc.*, No. DKC 2008–1817, 2009 WL 2507426 at *11 (D.Md. Aug. 13, 2009) ("A plaintiff must first exhaust his administrative remedies as required by [the statutory precursor to section 20–1013]. . . ."). Plaintiff makes no attempt to address these statutory provisions, reply to Defendant's arguments, or cite other MHRA provisions to support her claims regarding Stephenson. Thus, Plaintiff's effort to amend her Complaint to include MHRA sexual-harassment claims relating to Stephenson will be treated the same as her Title VII claims and denied as futile.[3]

---

3. Because the Court dismisses claims relating to Stephenson on the basis of failure to exhaust administrative remedies, the Court need not address Defendant's argument that those claims should also be dismissed as time-barred.

Plaintiff's harassment claims relating to Casteel and her pregnancy cannot be dismissed for failure to exhaust administrative remedies, because the Charge Letter to the EEOC focused on the same factual allegations. Instead, Defendant argues that the claims relating to Casteel should be dismissed because the facts alleged do not satisfy the substantive elements of hostile-environment sexual harassment. Plaintiff filed no reply brief in response to Defendant's arguments, and the Court agrees that amending the Complaint to add sexual-harassment claims relating to Plaintiff's pregnancy and transfer would be futile.

■ To establish a claim for hostile-environment sexual harassment, Plaintiff "must show that the conduct in question was unwelcome, that the harassment was based on sex, and that the harassment was sufficiently severe or pervasive to create an abusive working environment." *Swentek v. USAIR, Inc.*, 830 F.2d 552, 557 (4th Cir.1987). Considering only the factual allegations relating to Casteel and Plaintiff's pregnancy (because Plaintiff has not exhausted her administrative remedies for her claims relating to Stephenson), Plaintiff has only alleged a small number of potentially harassing conversations—all private—with Casteel and Figgs. The Court will address each of these conversations in turn.

■ Based on the allegations contained in the Proposed Amended Complaint, the conversations between Plaintiff and Casteel do not amount to harassment. Casteel allegedly sought to "convince Plaintiff to abort the pregnancy," Doc. No. 20–2 at ¶ 25, and he "insisted" upon her procuring

an abortion even after learning that her doctor had told her that an abortion would imperil her health, *id.* ¶ 27. Because Casteel is the father of Plaintiff's child, it is unsurprising and appropriate that they would discuss her pregnancy and assess their options. Nothing in the Proposed Amended Complaint suggests that Casteel did anything in these conversations other than insist upon his view that Plaintiff should abort their child. The Court neither condones nor condemns Casteel's actions, but simply holds that the law will not treat private, non-degrading conversations about how to handle a pregnancy between a mother and father of a child as harassment, even when the mother and father happen to be coworkers.

■ The only episode that potentially constitutes harassment based on sex or pregnancy is Plaintiff's conversation with Figgs, where he demanded that Plaintiff not contact Casteel anymore, and that she would likely lose her job if she did. However, it appears from the Proposed Amended Complaint that this conversation was an isolated event. It does not amount to "severe and pervasive" harassment that would make Plaintiff's day-to-day work environment hostile and intolerable. *Swentek*, 830 F.2d at 557. These allegations, together with the allegedly adverse employment action of transferring Plaintiff, *might* state a viable claim for sex and/or pregnancy discrimination[4]; but given these facts, hostile-environment sexual harassment is not the appropriate theory of discrimination. Thus, the Court holds that the sexual-harassment claim in the Proposed Amended Complaint should be dismissed in its entirety.

---

4. The Court does not decide whether the claim for sex and/or pregnancy discrimination contained in the original Complaint would survive a motion to dismiss on the merits. That question is not before the Court, because Defendant's motion to dismiss the original Complaint, Doc. No. 9, only addresses exhaustion of remedies, not the merits of the claim.

## B. Retaliation

The second claim articulated in the Proposed Amended Complaint is captioned "Discrimination—Retaliation and Reprisal." Doc. No. 20–2 at 7. Although the caption is confusing, because discrimination and retaliation are distinct theories under Title VII, it is clear that the gist of the claim is retaliation. To establish a *prima facie* case of retaliation, the plaintiff must show "(1) plaintiff engaged in protected activity, such as filing an EEO complaint; (2) the employer took adverse employment action against plaintiff; and (3) a causal connection existed between the protected activity and the adverse action." *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994).

The retaliation claim would be a futile amendment to the Complaint, because Plaintiff's Charge Letter to the EEOC only alleged that the adverse actions taken against her were based on her pregnancy and her refusal to procure an abortion, *not* that her transfer was a reprisal for protected activity. *See* Doc. No. 9–4. In fact, in Plaintiff's Charge Letter, she only checked the box for "DISCRIMINATION BASED ON ... SEX"; she did not check "RETALIATION." Thus, Plaintiff has not exhausted her administrative remedies for retaliation, and the Court will deny the request to add a retaliation claim as futile. *See, e.g., Sloop v. Mem. Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir.1999) (dismissing Title VII retaliation claim because plaintiff's EEOC charge letter only alleged age discrimination, not retaliation).

## C. Intentional Infliction of Emotional Distress ("IIED")

In order to state a claim for IIED, Plaintiff must allege that: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connec-

tion between the wrongful conduct and the emotional distress; (4) The emotional distress must be severe." *Harris v. Jones*, 281 Md. 560, 380 A.2d 611, 614 (1977). Unlike for the other counts in the Proposed Amended Complaint, the Court may consider the allegations relating to Stephenson in evaluating her IIED claim, because there is no exhaustion-of-administrative-remedies requirement. Nonetheless, although the events described in the Proposed Amended Complaint are deeply troubling, they do not rise to the level of outrageousness and emotional distress that is necessary in order to make out a cognizable IIED claim in Maryland.

In order to satisfy the extreme-and-outrageous-conduct element, the facts alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Childers v. Chesapeake & Potomac Tel. Co.*, 881 F.2d 1259, 1266 (4th Cir.1989). This Court has previously stated that, "[a]s inappropriate and repulsive as workplace harassment is, such execrable behavior almost never rises to the level of outrageousness, and almost never results in such severely debilitating emotional trauma, as to reach the high threshold invariably applicable to a claim of [IIED] under Maryland law." *Arbabi v. Fred Meyers, Inc.*, 205 F.Supp.2d 462, 466 (D.Md.2002). The allegations in this case are, sadly, fairly typical in workplace-harassment situations. They do not rise to the level of outrageousness required to make out an IIED claim.

Furthermore, Plaintiff has not adequately alleged severe emotional distress. To satisfy this element, she must plead facts showing that she suffered a "*severely* disabling emotional response,' so acute that 'no reasonable man could be expected to endure it.'" *Moniodis v.*

*Cook,* 64 Md.App. 1, 494 A.2d 212, 219 (Md.Ct.Spec.App.1985), *superseded by statute on other grounds as stated in Weathersby v. Ky. Fried Chicken Nat'l Mgmt. Co.,* 86 Md.App. 533, 587 A.2d 569, 572–75 (Md.Ct.Spec.App.1991). The Proposed Amended Complaint simply states that Plaintiff "has suffered and is still suffering, [sic] mental anguish and emotional distress." Doc. No. 20–2 at ¶ 53. These boilerplate allegations are insufficient to meet the difficult burden of stating an IIED claim, so Plaintiff's effort to amend the Complaint to add such a claim must be denied as futile.

### D. The Original Complaint

Because Plaintiff's motion for leave to file the Proposed Amended Complaint should be denied as futile, the Court must now address Defendant's motion to dismiss the original Complaint. The original Complaint does not articulate its legal theories with the same level of precision as the Proposed Amended Complaint. Although the Complaint requests relief based on "discrimination and retaliation" under Title VII, Compl. at 4, ¶ 2, it contains no allegations of protected activity such as would be necessary to state a claim for retaliation. Insofar as the Plaintiff sought to present retaliation as a theory of recovery, the claim is dismissed for failure to exhaust administrative remedies for the reasons discussed above. *See supra,* section III.B.

■ However, the gist of the Complaint is a claim for sex and/or pregnancy discrimination based on Plaintiff's alleged demotion and transfer, and Plaintiff has adequately exhausted her remedies with respect to that claim. Defendant's only argument is that Plaintiff did not specifically mention in the Charge Letter that she was transferred. However, Plaintiff is not restricted to raising only the precise facts laid out in her EEOC Charge Letter; rather, she can also raise facts "reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint." *Evans,* 80 F.3d at 963.

The allegation that she was transferred because of her pregnancy clearly satisfies this test, because the Charge Letter stated that Figgs "threatened [her] job status and told [her] to never contact Mr. Casteel again or [she] would be terminated.... He told [her] he was just trying to save [her] job." Doc. No. 9–4. Although the Charge Letter does not mention that she was transferred, she alleges that her transfer is the fulfillment of Figgs's threats, and therefore it is "reasonably related to" allegations contained in the Charge Letter. *Evans,* 80 F.3d at 963. Thus, Defendant's motion to dismiss is denied.

### E. Factual Allegations in the Proposed Amended Complaint

The Proposed Amended Complaint not only sought to add three new legal theories; it also sought to add depth and detail to the facts surrounding Plaintiff's relationship with Casteel, the threats from Figgs, and the adverse actions taken against her by Verizon. The Court only intends to preclude Plaintiff from amending the Complaint to add futile legal claims and factual allegations relating to those claims (*i.e.,* the facts relating to Stephenson). Thus, if the Plaintiff wishes, she may file, within ten days, a second motion for leave to file an amended complaint, providing additional factual details to support her surviving claim. If Plaintiff does not file such a motion within ten days, then Defendant is directed to file an answer or otherwise respond to the Complaint within ten days of the expiration of Plaintiff's window for filing the motion.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss, Doc. No. 9, is denied and Plaintiff's motion for leave to file an Amended Complaint, Doc. No. 20, is denied. A separate Order will follow.