**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 22-1456**

---

CHRISTINE G. NELSON,

       Plaintiff - Appellant,

    v.

LOCAL 1422, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION; SOUTH CAROLINA STEVEDORES ASSOCIATION,

       Defendants - Appellees.

---

Appeal from the United States District Court for the District of South Carolina, at Charleston.  David C. Norton, District Judge.  (2:19-cv-01545-DCN)

---

Submitted:  January 3, 2023                    Decided:  April 11, 2023

---

Before HARRIS, RICHARDSON, and RUSHING, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**ON BRIEF:**  Marybeth E. Mullaney, MULLANEY LAW FIRM, Charleston, South Carolina, for Appellant.  John R. Bielski, WILLIG, WILLIAMS & DAVIDSON, Philadelphia, Pennsylvania, for Appellee Local 1422, International Longshoremen's Association.  Wilbur E. Johnson, CLEMENT RIVERS, LLP, Charleston, South Carolina, for Appellee South Carolina Stevedores Association.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Christine Nelson, a longshore worker in the ports of Charleston, brought this Title VII action after two male coworkers made unwelcome physical contact with her. The district court granted summary judgment to the defendants – Nelson's union, and a trade association of stevedoring companies – on two alternative grounds:  first, that the defendants were not Nelson's employers for purposes of Title VII liability; and second, that even if they were, no reasonable jury could find against them on the merits of Nelson's Title VII claims. We agree with the district court as to the merits of Nelson's claims, and on that ground, we affirm its judgment.

## I.

### A.

Plaintiff Christine Nelson is a longshore worker in Charleston, South Carolina, where she has performed work for several stevedoring companies. Those companies are members of a nonprofit trade association, the South Carolina Stevedores Association ("SCSA"), which acts as the collective bargaining representative for Charleston's port employers.  Nelson is represented by Local 1422, International Longshoremen's Association, the exclusive bargaining unit for longshore workers in the ports of South Carolina.

In March 2017, Nelson alleges, a coworker placed his hand on her upper thigh and touched her around her crotch area while the two were on a shuttle used to transport workers to and from ships. According to Nelson, this was the second time the coworker,

2

Dennis Snipe, had touched her inappropriately. She reported the shuttle incident to union officials and filed a grievance with the Port Grievance Committee, an entity established by Local 1422 and the SCSA to resolve disputes between the union and stevedoring companies. After hearing testimony from Snipe and Nelson, the Committee suspended Snipe for 30 days and required him to take a class about sexual harassment. Nelson does not allege any further harassment by Snipe.

But Nelson was again subjected to physical harassment on the work shuttle, she alleges, when a different coworker, David Smalls, put his hand on her seat so that it was underneath her buttocks and around her vaginal area when she sat down. Nelson reported this incident to Kenneth Riley, the union president, who spoke to Smalls and told him his conduct was impermissible. Smalls did not touch Nelson again after that.

Nelson alleges that because of her complaints, the "Headers" who selected individuals for work each day at a union-supervised hiring hall were at times passing her over, instead selecting workers with less seniority. In August 2017, she complained to Riley that one such Header, Melvin Smith, was not selecting her for work; two days later, Nelson and Smith had an encounter in the hiring hall that Nelson described as violent, with Smith grabbing her hand and turning it at the wrist. After Nelson filed a grievance alleging that Smith had assaulted her, the Port Grievance Committee held a hearing at which both Nelson and Smith presented evidence and witnesses, and reviewed video footage from a hiring-hall security camera. Ultimately, the Committee determined that Nelson's allegations were unfounded and dismissed her grievance. And then, in response to a

3

grievance filed by Smith against Nelson, the Committee found that Nelson had made groundless allegations against Smith and suspended her for 30 days.

After serving her suspension, Nelson took additional time off to seek mental health treatment for the harassment and retaliation she felt she had experienced at work. When she returned in July 2018, she submitted a letter from her doctor diagnosing her with depression, PTSD, panic attacks, and insomnia, and recommending that she be allowed to ride in the front of the work shuttle to avoid anxiety. The SCSA expressed concern that Nelson's health conditions would lead to safety issues, and Nelson was placed on administrative leave until she could confirm, through a medical release, that she could safely return to work. She remained on leave for approximately six months.

**B.**

After filing several charges with the Equal Employment Opportunity Commission ("EEOC"), Nelson brought this Title VII action in district court. She named as defendants Local 1422 and the SCSA, alleging that they were her joint employers at the relevant time and subjected her to harassment, a hostile work environment, and retaliation, all in violation of Title VII. After discovery, both defendants moved for summary judgment, and Nelson cross-moved for partial summary judgment on some of her claims.

A magistrate judge issued a thoroughly reasoned 42-page report recommending that the district court grant summary judgment to the defendants. *Nelson v. Loc. 1422, Int'l Longshoreman's Ass'n*, No. 2:19-cv-01545-DCN-MGB, 2021 WL 8014680 (D.S.C. Sept. 22, 2021). The magistrate judge concluded, first, that Local 1422 and the SCSA could not be held liable under Title VII as "joint employers" of Nelson; instead, Nelson was

4

employed by the stevedoring companies for which she worked and that paid her wages. *Id.* at \*8. But even assuming the defendants were Nelson's employers, the magistrate judge continued, they would be entitled to summary judgment because there was no record evidence from which a jury could find them liable for sex discrimination or retaliation against Nelson. *Id.* at \*9.

The district court, with its own lengthy and carefully reasoned opinion, adopted the magistrate judge's report in virtually all respects and granted summary judgment to the defendants. *Nelson v. Loc. 1422, Int'l Longshoreman's Ass'n*, No. 2:19-cv-01545-DCN-MGB, 2022 WL 970149 (D.S.C. Mar. 31, 2022). The court held, first, that the SCSA and Local 1422 were not Nelson's "joint employers" subject to Title VII liability because they did not exercise "significant control" over her. *See id.* at \*4–7 (quoting *Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 410 (4th Cir. 2015)). It was undisputed that Nelson performed work for, and was paid by, individual stevedoring companies. *See id.* at \*6. Nelson argued that it nevertheless was the defendants who controlled her hiring and firing, because they operated the hiring hall through which she was assigned to the stevedoring companies each day. But that theory, the district court concluded, lacked evidentiary support in the record; instead, it was clear that the stevedoring companies themselves, through their appointed "Headers" at the hiring hall, "made the final decision" as to who would work for which companies. *Id.* at \*5. The district court also canvassed other factors identified in *Butler* – including day-to-day supervision, furnishing of equipment and place of work, and possession of employment records – and found that none supported treating

5

the defendants as joint employers.  On that ground alone, the district court concluded, the defendants were entitled to summary judgment.  *Id.* at *7.

Like the magistrate judge, however, the district court went on to consider, in the alternative, whether the record would allow for a finding in favor of Nelson on the merits of her Title VII claims.  And like the magistrate judge, the district court concluded that even if the defendants were Nelson's employers, they would be entitled to summary judgment on Nelson's sex discrimination and retaliation claims.  *See id.* at *8–12.

The district court started with a claim Nelson raised for the first time in her summary judgment briefing:  that she was excluded from certain work assignments – jobs performed using heavy chains – because she was a woman.  *Id.* at *8.  That claim was subject to dismissal, the district court concluded, because Nelson had failed to exhaust it before the EEOC.  Though Nelson had filed several EEOC charges, the district court explained, none alleged a discriminatory policy of barring women from certain jobs.  Nor was Nelson's new allegation "like or related to" those she had raised before the EEOC.  *Id.* at *9.

The district court next took up Nelson's hostile work environment claim, predicated mostly on the unwanted touching by coworkers Snipe and Smalls, and pursued only against defendant Local 1422.  *Id.*  That claim failed, the district court concluded, because there was no "basis for imposing liability on the employer."  *Id.* (quoting *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (outlining four elements of a hostile work environment claim, including "some basis for imposing liability on the employer")).  Even assuming the union qualified as Nelson's employer, that is, it would be liable for her coworkers' harassment only if "it knew or should have known about [it] and failed to take

6

effective action to stop it by responding with remedial action reasonably calculated to end the harassment." *Id.* (cleaned up) (quoting *Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 498 (4th Cir. 2015)). But here, it was undisputed that Local 1422, after being informed of the incidents involving Snipe and Smalls, *had* taken action that ended the harassment: After the Port Grievance Committee suspended Snipe and the union president talked to Smalls, neither harassed Nelson again. *Id.* And while Nelson raised other, more general complaints of a hostile workplace environment – for instance, the playing of explicit videos on coworkers' cellphones – she had failed to identify evidence that Local 1422 was or should have been aware of such behavior. *Id.*

The district court then turned to Nelson's retaliation claims. As relevant on appeal, Nelson alleged two forms of retaliation: first, her 30-day suspension, in response to Smith's grievance against her; and second, the failure of various Headers to select her for work on certain days.[1] The defendants did not dispute that Nelson had engaged in protected activity when she filed grievances and lodged complaints about her harassment. Instead, as the district court explained, Nelson's claims turned on whether she could show a causal link between that protected activity and the employment actions that followed and, if so, whether she had produced sufficient evidence that the defendants' asserted legitimate and

---

[1] Before the district court, Nelson also argued that the defendants retaliated against her when they placed her on a six-month administrative leave after her doctor diagnosed her with health conditions including PTSD and insomnia and requested that she be accommodated with a seat in the front of the work shuttle. The district court rejected this claim, finding that the defendants provided a legitimate, non-retaliatory reason for the leave, in the form of safety concerns, and that Nelson failed to present evidence of pretext. *Nelson*, 2022 WL 970149, at *11. Nelson appears to have abandoned this claim on appeal, and so we do not address it further.

non-retaliatory reasons for their actions were actually pretext for retaliation. *See id.* at \*10 (citing *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) (outlining *McDonnell Douglas* burden-shifting framework)). Following the magistrate judge's recommendation, the district court concluded that Nelson could not make the necessary showing as to either form of alleged retaliation.

As discussed above, Nelson's 30-day suspension was imposed by the Port Grievance Committee after – and, according to Nelson, because – she filed a grievance against Smith for assaulting her by violently twisting her wrist. The district court adopted the magistrate judge's finding that the temporal proximity between Nelson's grievance and her suspension was enough to show causation and that Nelson had thus established a prima facie case of retaliation. *Id.* at \*11; *see Nelson*, 2021 WL 8014680, at \*13. But it also agreed with the magistrate judge that the defendants had come forward with a legitimate and non-retaliatory reason for the suspension – that Nelson had made false allegations against Smith, an offense listed as a potential ground for adverse action in the governing collective bargaining agreement – and that Nelson had not produced evidence showing this reason was pretextual. *Nelson*, 2022 WL 970149, at \*11. Nelson did claim that the Port Grievance Committee had failed to undertake a good-faith investigation of the incident at the hiring hall, and that video camera footage that could have corroborated her account had been destroyed by the defendants or deliberately withheld from consideration. But as the district court pointed out, those allegations were not supported by any record evidence. *Id.* And while Nelson disagreed with the Committee's finding – urging that the video footage in the record was "inconclusive" – the defendants' burden was satisfied so long as they had

8

a good-faith belief that Nelson's account was false and they suspended her for that reason. *Id.*

Nelson also alleged that the defendants retaliated against her through hiring-hall Headers, including Smith, who failed to select her for work, in violation of seniority rules, on ten specified days in 2017 and 2019. *Id.* at *12. Here the district court concluded, in agreement with the magistrate judge, that Nelson had failed to establish a prima facie case of retaliation, because she could not show that the ten failures to select her at the hiring hall were causally linked to her protected activity. There was no close temporal proximity between Nelson's protected activity and the days on which she was allegedly passed over for work, the district court determined, and no other evidence of causation to fill this gap. *Id.* Indeed, the record evidence was to the contrary, showing that Nelson was repeatedly selected for work by many of the same Headers she alleged were retaliating against her. *Id.*

In sum, the district court granted summary judgment to the defendants on two alternative grounds: first, that they were not Nelson's joint employers under Title VII; and second, that Nelson in any event could not go forward on the merits of her claims against them. And for the same reasons, the court denied Nelson's cross-motion for partial summary judgment. *Id.* at *13. Nelson timely appealed the grant of summary judgment to the defendants.

## II.

On appeal, Nelson raises substantially the same arguments she advanced before the district court. And for substantially the same reasons given by the district court, we agree

9

that the evidence in the summary judgment record would not allow for a finding in favor of Nelson on the merits of her Title VII claims, regardless of whether the defendants were her employers under Title VII. We therefore affirm the judgment of the district court on that basis, making it unnecessary to address or resolve the joint-employer issue.[2]

We review de novo a district court's award of summary judgment, viewing the facts in the light most favorable to the nonmoving party. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 276 (4th Cir. 2015) (en banc). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Applying that standard, we find no error in the district court's grant of summary judgment to the defendants on the merits of Nelson's claims.

First, as the district court concluded, Nelson cannot prevail on her new sex discrimination claim – that she and other women were categorically barred from jobs involving "heavy chains" – because Nelson failed to exhaust it before the EEOC. Nelson does not dispute that she failed to include this claim in any of her EEOC charges. Instead, she argues that it is sufficiently "like or related to" the hostile work environment and retaliation allegations she *did* bring before the EEOC that she may advance it now in litigation. *See Stewart v. Iancu*, 912 F.3d 693, 705 (4th Cir. 2019). Like the district court,

---

[2] Whether the defendants qualify under Title VII as Nelson's employers, joint or otherwise, is not a question that bears on our jurisdiction to review the merits of Nelson's claims. *See Arbaugh v. Y & H Corp*, 546 U.S. 500, 516 (2006) (holding that whether a defendant meets Title VII's definition of "employer" is "an element of a plaintiff's claim for relief, not a jurisdictional issue").

10

we disagree. Nelson's new discrimination claim raises an entirely different type of discrimination and rests on an entirely different factual predicate: instead of workplace harassment, sex discrimination in hiring, based on an alleged employer policy of refusing to consider women for certain jobs. *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2009) (explaining that claim is unexhausted where it "encompasses another type" of discrimination than what is alleged before the EEOC). For the reasons given by the district court, *see Nelson*, 2022 WL 970149, at *8–9, Nelson's new sex discrimination claim must be deemed unexhausted, and it is therefore subject to dismissal.[3]

When it comes to her hostile work environment claim, Nelson barely addresses the ground on which the district court granted summary judgment to Local 1422[4]: that Nelson could not show any basis for imposing liability on the union for the conduct of her coworkers. *See id.* at *9; *Pryor*, 791 F.3d at 498 (outlining circumstances under which harassing conduct by coworkers may be imputed to employer). Instead, Nelson focuses on a different element of a hostile workplace environment claim, arguing that the sexual

---

[3] Both the magistrate judge and the district court recognized that the proper disposition of an unexhausted claim is dismissal. *See Nelson*, 2022 WL 970149, at *8; *Nelson*, 2021 WL 8014680, at *9; *Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 148–49 (4th Cir. 1999) (dismissing unexhausted Title VII claim); *Chacko*, 429 F.3d at 513 ("We have generally dismissed any claims in which the plaintiff has not exhausted his administrative remedies before bringing suit."). Although the district court's judgment does not expressly distinguish this claim from those on which it granted summary judgment, we understand the district court to have dismissed Nelson's unexhausted claim, as is appropriate.

[4] In her briefs on appeal, Nelson clarifies that she is pursuing her hostile work environment claim only against Local 1422. There is thus no dispute that the SCSA is entitled to summary judgment on this claim.

harassment she suffered was "severe" and "pervasive." *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 314–19 (4th Cir. 2008) (describing and applying "sufficiently severe or pervasive" standard). But the district court never doubted that the alleged conduct would so qualify; instead, it relied entirely on the imputation prong of a hostile work environment claim, and on the undisputed fact that Local 1422 responded to Nelson's reports in a way that caused the misconduct to cease. *See EEOC v. Xerxes Corp.*, 639 F.3d 658, 670 (4th Cir. 2011) (explaining that remedial action by employer that stops harassment is "deemed adequate as a matter of law"). For the reasons given by the district court, Local 1422 – even assuming it was Nelson's employer – was entitled to summary judgment on this claim.[5]

Finally, Nelson cannot show that the district court erred in granting summary judgment to the defendants on her retaliation claims. Many of Nelson's arguments regarding her 30-day suspension – that the defendants failed to fully explain her suspension, or to adhere to their own policies on the reporting of misconduct – are raised for the first time on appeal and therefore waived. *See Martin v. Duffy*, 858 F.3d 239, 245

---

[5] Nor can Nelson prevail in her effort to hold Local 1422 liable on her hostile work environment claim as a labor organization rather than an employer. *See* 42 U.S.C. § 2000e-2(c)(1) (prohibiting discrimination by labor organizations). Before the district court, Nelson argued that Local 1422 was liable under § 2000e-2(c)(1) because it breached its collective bargaining agreement, based on discriminatory motives, by failing to fully investigate her claim against Smith. The district court found no evidence to support that claim, *Nelson*, 2022 WL 970149, at *8, and Nelson does not reassert it on appeal. Instead, Nelson now argues that the union is liable under § 2000e-2(c)(1) because it failed to address harassing conduct by its members. But for the same reasons Local 1422 would be entitled to summary judgment on this claim as Nelson's employer, outlined above, it is entitled to summary judgment under § 2000e-2(c)(1), as well.

(4th Cir. 2017) (explaining that failure to raise an argument before the district court typically results in waiver on appeal). And the arguments Nelson did raise before the district court – that the Port Grievance Committee's investigation into her allegations against Smith was shoddy, and that the defendants destroyed or withheld video evidence – remain without evidentiary support, as the district court held.

As for the ten alleged failures of Headers to select her for work, the record fully bears out the district court's conclusion that Nelson cannot establish the requisite causal link to protected activity. For instance, Smith – one of the Headers identified by Nelson, and the one with whom she had the protracted dispute that led to her suspension – regularly *did* select Nelson for work even after she registered her complaints, doing so on at least 84 occasions, including 69 that came after their altercation in the hiring hall. *See Nelson*, 2021 WL 8014680, at *19. Like the district court, we think the undisputed fact that Nelson was repeatedly hired by many of the same Headers she accuses of retaliation "weighs against finding causation," *Nelson*, 2022 WL 970149, at *12, and combined with other deficiencies in Nelson's evidentiary showing, justifies the grant of summary judgment to the defendants on this claim.[6]

---

[6] Both the magistrate judge and district court found that Nelson had pointed to no evidence showing that the Headers, other than Smith himself, even knew about her protected activity. *Nelson*, 2021 WL 8014680; at *18–19; *Nelson*, 2022 WL 970149, at *12. Nor could the temporal relationship between Nelson's protected activity and the alleged failures to hire establish causation, in part because the four alleged non-hiring events that occurred after Nelson filed her grievance against Smith occurred more than a year after she did so. *Nelson*, 2021 WL 8014680, at *19. The record also shows that, on several of the dates identified by Nelson, she was not in fact passed over for more junior employees, as she contends.

Accordingly, and substantially for the reasons given by the district court in its thorough opinion, we affirm the judgment of the district court.

<em>AFFIRMED</em>