PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MATHEN CHACKO,

*Plaintiff-Appellee,*

v.

PATUXENT INSTITUTION,

*Defendant-Appellant.*

No. 04-1577

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson Everett Legg, Chief District Judge.
(CA-00-1951-L)

Argued: September 21, 2005

Decided: November 29, 2005

Before WILKINSON and WILLIAMS, Circuit Judges, and
Robert J. CONRAD, Jr., United States District Judge for the
Western District of North Carolina, sitting by designation.

Reversed by published opinion. Judge Wilkinson wrote the opinion,
in which Judge Williams and Judge Conrad joined.

## COUNSEL

**ARGUED:** Alan Douglas Eason, Assistant Attorney General,
OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Balti-
more, Maryland, for Appellant. Bryan Anthony Chapman, Washing-
ton, D.C., for Appellee. **ON BRIEF:** J. Joseph Curran, Jr., Attorney
General, Baltimore, Maryland, for Appellant.

**OPINION**

WILKINSON, Circuit Judge:

We must decide in this case whether the plaintiff exhausted his administrative remedies, and thus properly brought suit in federal district court, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (2000). Before a Title VII plaintiff can bring a formal suit, he must file an administrative charge with the Equal Employment Opportunity Commission (EEOC). This charge frames the scope of future litigation. "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). We hold that a plaintiff fails to exhaust his administrative remedies where, as here, his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit. We therefore reverse the district court's denial of the defendant's motion for judgment as a matter of law.

I.

Plaintiff, Mathen Chacko, brought suit under Title VII against his former employer, Patuxent Institution ("Patuxent"). Patuxent is a correctional facility operated by the Maryland Department of Public Safety and Correctional Services. Most of its correctional officers are African American. Chacko is an Indian American. He was originally born in India, immigrated to this country in 1975, and is now an American citizen. Chacko began employment with Patuxent in 1982. During his tenure, Patuxent promoted him four times, eventually to the position of lieutenant. Chacko was demoted to sergeant in 2000, and retired from Patuxent in 2002.

Over his twenty-year career at Patuxent, Chacko filed various internal complaints against his supervisors pursuant to Patuxent's anti-discrimination policy, which provides in-house procedures for addressing discrimination claims. He also filed several external administrative charges against Patuxent with the Maryland Commis-

sion on Human Relations (MCHR) and the EEOC. Three of those charges are relevant to this dispute.

The first of these was filed on November 9, 1999. In this charge, Chacko alleged that he was passed over for the position of captain because of his national origin and sex. He did not mark the box on the EEOC form that would suggest the discrimination involved "continuing action" by Patuxent. Chacko also noted in this administrative charge that he had filed two in-house discrimination complaints against certain supervisors for unspecified "harassment." Chacko filed the first in-house complaint on September 24, 1999, the same day as the alleged incident. He stated in this complaint that Captain Gerald Howard, an African American, ordered him out of the captain's office while African American lieutenants were allowed to remain. He also noted that he had previously filed other in-house discrimination complaints during his tenure at Patuxent.

Chacko filed the second in-house complaint referenced in his first administrative charge on October 18, 1999, again the same day as the alleged incident. He claimed that he was released from a training class early with a group of coworkers who all began to go home for the day. Chief of Security Robert Eggleston, also an African American, told Chacko to return to work because he had excused the other employees and not Chacko. When Chacko complained, Eggleston told him to see Major Ronald Bridges. Bridges subsequently allowed him to leave, but Sergeant Eddie Owens laughed at him about the incident. Chacko expressed concern in this first administrative charge that both of these incidents would appear on his record and affect his chances for promotion.

Chacko filed his second administrative charge with the MCHR and EEOC on January 13, 2000. This charge concerned a letter to Chacko from Director Richard B. Rosenblatt. Chacko noted in the charge that he had written letters to Rosenblatt on September 27, 1999, and December 10, 1999, about the "hostile treatment" that he had received from his supervisors. In reply, on December 21, 1999, Rosenblatt allegedly stated that Chacko did not have the right to question Patuxent's policies, and told him to surrender his bars, take stress leave, or go to the state medical director. In the second charge, Chacko noted he found Rosenblatt's response intimidating, and that African Ameri-

can employees were not subject to this type of "hostile treatment." He also noted that the date of the discrimination was December 21, 1999, and he again did not mark the box entitled "continuing action." Lastly, Chacko filed a third administrative charge on March 1, 2000. It alleged that Patuxent demoted him from lieutenant to sergeant in retaliation for his filing the other charges.

The EEOC issued Chacko a right-to-sue letter on June 7, 2000. Chacko subsequently filed suit against Patuxent, alleging national-origin discrimination. Specifically, he alleged that he was denied promotion, retaliated against for filing his first two administrative charges, and subjected to a hostile work environment. The district court granted Patuxent's motion for summary judgment on the failure to promote and retaliatory demotion claims. It denied summary judgment on the hostile work environment claim, however, because Chacko had presented the affidavits and depositions of several Patuxent employees who noted that Chacko was repeatedly ridiculed with derogatory epithets based on his national origin. Patuxent objected that Chacko had never presented this evidence before its motion for summary judgment, and that any suit based on these facts was outside Chacko's administrative charges. The district court rejected the argument.

The district court held a jury trial in July, 2003. Chacko's primary theory of the case was that over his twenty-year career, his coworkers on a daily basis hurled a barrage of national-origin insults and epithets at him. These coworkers made his workday miserable with such degrading comments as "camel jockey," "go back home and ride your camel," "crazy Indian," and "go back to India and wash elephant nuts for a living." This evidence was "the centerpiece in a collection of hostile and abusive treatment that Mr. Chacko encountered as an employee of Patuxent Institution." Br. of Appellee at 13. The evidence at trial also indicated that certain supervisors may have observed the heinous conduct, but did not take corrective action. Instead, they laughed when coworkers made offensive comments, and may have joined in the name calling. There was no evidence, however, that any of the supervisors identified in the administrative charges ever called Chacko derogatory names, and Chacko specifically testified that neither Howard nor Eggleston engaged in such conduct.

The district court instructed the jury that it could find a hostile work environment based on coworker and supervisor harassment. In a general verdict, the jury found that Patuxent created a hostile work environment for Chacko and awarded him $1,160,000. Based on Title VII's damages cap, 42 U.S.C. § 1981a(b)(3), the district court reduced the damages to $300,000. On August 18, 2003, it ordered judgment in favor of Chacko for that amount.

Patuxent filed several post-trial motions, including one for judgment as a matter of law. It again argued, inter alia, that Chacko's main proof at trial — his coworkers' consistent use of national-origin epithets against him — was outside the scope of his administrative charges. As it had done before trial, the district court rejected this argument. It concluded that the administrative charges referenced supervisor harassment and that this supervisor harassment was reasonably related to the coworker epithets because supervisors laughed when coworkers called him names and did not discipline these coworkers. Patuxent now appeals this ruling.[1]

## II.

Title VII gives initial enforcement responsibility to the EEOC. An individual alleging discrimination in violation of Title VII must first file an administrative charge with the EEOC within a certain time of the alleged unlawful act. *See* 42 U.S.C. § 2000e-5(e)(1). A charge is acceptable only if it is "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b) (2004). After the charge has been filed, the EEOC investigates the alleged unlawful acts and provides notice of the charges to the employer within ten days. 42 U.S.C. § 2000e-5(b). If the EEOC finds reasonable cause to believe the allegations are true, it "shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.* An individual cannot bring suit until he has exhausted the administrative process. *See* 42 U.S.C. § 2000e-5(b), (f)(1); *Bryant v.*

---

[1]Patuxent also raises several other issues on appeal, but since we hold that Chacko failed to exhaust his administrative remedies, we do not reach them here.

*Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002); 29 C.F.R. § 1601.28.

Even after a plaintiff has exhausted his administrative remedies, the administrative framework plays a substantial role in focusing the formal litigation it precedes. If "the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995); *see also Bryant*, 288 F.3d at 132 (same). Consequently, "[t]he allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996). At the same time, however, lawyers do not typically complete the administrative charges, and so courts construe them liberally. *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988).

Our cases make clear that the factual allegations made in formal litigation must correspond to those set forth in the administrative charge. For example, the plaintiff's claim generally will be barred if his charge alleges discrimination on one basis — such as race — and he introduces another basis in formal litigation — such as sex. *See Bryant*, 288 F.3d at 132-33; *Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999) (Title VII retaliation claim barred when administrative charges alleged only age discrimination). A claim will also typically be barred if the administrative charge alleges one type of discrimination — such as discriminatory failure to promote — and the claim encompasses another type — such as discrimination in pay and benefits. *See Evans*, 80 F.3d at 963-64; *Lawson v. Burlington Indus., Inc.*, 683 F.2d 862, 863-64 (4th Cir. 1982) (claim of discriminatory failure to rehire barred because charge only alleged illegal layoff).

Similarly, we have held that the allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct. *See Dennis*, 55 F.3d at 153, 156-57 (charge that alleged discrimination in defendant's disciplining did not cover broader pattern of discrimination in hiring, training, and promotion). By the same token, if the factual foundation

in the administrative charge is too vague to support a claim that is later presented in subsequent litigation, that claim will also be procedurally barred. *See Taylor v. Va. Union Univ.*, 193 F.3d 219, 239 (4th Cir. 1999) (en banc) (no exhaustion of administrative remedies where facts incorporated into the charge, including after-hours phone calls and touching, were too inconclusive to suggest sexual harassment).

At the same time, however, if the factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation, the connection between the charge and the claim is sufficient. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247-48 (4th Cir. 2000) (plaintiff exhausted administrative remedies when both formal complaint and administrative charge alleged she was retaliated against by management because she complained about supervisor's sexual harassment); *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981); *see also Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) ("The crucial element of a charge of discrimination is the factual statement contained therein.") (internal quotation marks omitted); *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001) ("[T]he EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals.") (internal quotation marks omitted).

## III.

Congress enacted Title VII's exhaustion requirement with several goals in mind. The filing of an administrative charge is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit. Rather, Congress intended the exhaustion requirement to serve the primary purposes of notice and conciliation.

First, an administrative charge notifies the employer of the alleged discrimination. *Sloop*, 198 F.3d at 149. This notice gives the employer an initial opportunity to voluntarily and independently investigate and resolve the alleged discriminatory actions. *See* 42 U.S.C. § 2000e-5(b). It also prevents the employer from later complaining of prejudice, since it has known of the allegations from the very beginning.

Second, the exhaustion requirement initiates agency-monitored settlement, the primary way that claims of discrimination are resolved.

"Title VII, including the creation of the EEOC, reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes." *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000). The EEOC's role in Title VII is thus critical because it can promote voluntary settlement in a manner that a more adversarial process cannot. *See W. R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 770-71 (1983).

Congress had reasons beyond those of notice and conciliation for placing primary enforcement responsibility in the administrative process. Congress, through Title VII, wanted to end discrimination, wherever it was found. The admirable goals of Title VII need not always be tied to the "ponderous pace" of formal litigation, with the result that victims of discrimination are forced to wait while injustice persists. *See, e.g.*, *Ford Motor Co. v. EEOC*, 458 U.S. 219, 228 (1982). Moreover, the EEOC undertakes detailed investigations into potential discrimination claims before any suit is filed, both preserving judicial economy, *Taylor*, 193 F.3d at 239, and helping prospective plaintiffs build their case. In fact, the EEOC can itself file suit and direct its arsenal of resources against the offending party, thereby raising the stakes for recalcitrant employers. *See* 42 U.S.C. § 2000e-5(f)(1). Finally, the EEOC has considerable expertise in the area of employment discrimination, and is thus better equipped to implement Title VII's goals. *See, e.g.*, *Butler v. West*, 164 F.3d 634, 642-43 (D.C. Cir. 1999) (noting that the EEOC has "a measure of expertise and familiarity with employment discrimination disputes that federal judges cannot readily match") (internal quotation marks omitted). For all these reasons, the administrative process is an integral part of the Title VII enforcement scheme.

IV.

A.

Chacko's "centerpiece" at trial was that coworkers continually made derogatory national-origin remarks to him over the course of his twenty-year career, and that supervisors did not discipline these coworkers, laughed at their comments, and may have joined them. Br.

of Appellee at 13. The sharp differences between this evidence and the allegations in Chacko's administrative charges compel the conclusion that he failed to exhaust his administrative remedies. The administrative charges at bottom alleged specific episodes of harassment. None of them mentioned coworker harassment or national-origin epithets. In contrast, Chacko's case at trial encompassed harassment over his two decades at Patuxent. It relied heavily on testimony that primarily coworkers (and not supervisors) called him national-origin epithets. The administrative charges thus dealt with different time frames, actors, and conduct than the central evidence at trial. We will discuss each of these incongruities in turn.

First, the allegations of harassment in the administrative charges involved three specific acts at specific times.[2] None suggested the long-term harassment that Chacko sought to prove at trial. The first administrative charge stated that he filed two in-house complaints with Patuxent for discrete acts of harassment that occurred on September 24, 1999, and October 18, 1999, respectively. That these in-house complaints concerned isolated incidents is reinforced by the fact that they both were filed within hours of the alleged misconduct and were concerned with the likelihood of promotion, not a continuous pattern of abuse. Similarly, the second administrative charge also alleged a specific harassing act, occurring on December 21, 1999. It is therefore unsurprising that Chacko failed to check the "continuing action" box in his administrative charges. *See, e.g.*, *Sloop*, 198 F.3d at 149 (plaintiff's failure to mark any of the boxes for Title VII discrimination supported the conclusion that her administrative charge did not encompass a Title VII retaliation claim).

Second, Chacko's administrative charges alleged only *supervisor* harassment and failed to mention the *coworker* harassment that he relied upon heavily at trial. The first charge contended that Captain Howard and Chief of Security Eggleston harassed him. The second

---

[2]Chacko's administrative charges also alleged two other discrete acts of discrimination, failure to promote and retaliatory demotion. But these claims of discrimination are clearly not allegations of a hostile work environment. *See, e.g.*, *Evans*, 80 F.3d at 963-64 (administrative charge of failure to promote did not encompass allegations of sexual harassment).

discussed Director Rosenblatt. These three individuals were all supervisors. As Chacko has acknowledged, however, his case at trial proceeded primarily on a coworker-harassment theory. Br. of Appellee at 2-4, 13-14. It is therefore unclear how Chacko's chief contention at trial was fairly encompassed within the allegations in his administrative charges, when they involved a different set of individuals with different rank and responsibility within Patuxent. *Compare Smith*, 202 F.3d at 248 (allegations in administrative charge reasonably related to allegations in formal complaint because both involved discrimination by management), *with Kersting*, 250 F.3d at 1118 (administrative charge and formal complaint must describe same individuals).

Third, none of the alleged acts of harassment in the administrative charges had anything to do with national-origin epithets — the most overtly discriminatory evidence Chacko advanced at trial. Rather, these charges described specific confrontations, none involving name calling, that Chacko had with his supervisors. In one instance, a supervisor ordered him out of an office. In another, a supervisor did not allow him to leave work early. The third involved a supervisor who responded to his letters in an intimidating manner. We are unable to find that these administrative charges encompass derogatory national-origin remarks when there is not a single mention of such remarks anywhere in the charges. In fact, Chacko never mentioned derogatory epithets until well into his formal litigation, in response to Patuxent's motion for summary judgment.[3]

---

[3]Chacko does not contend that other acts of supervisor harassment that may have been reasonably related to the administrative charges were "sufficiently severe or pervasive to create an abusive working environment." *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 772 (4th Cir. 1997). Nor could he. The joint appendix only illustrates what otherwise appear to be isolated confrontations with supervisors that fail to rise to the level of a hostile work environment. *Id.* at 773; *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) ("Hostile [work] environment claims are different in kind from discrete acts."). Furthermore, Chacko's potentially exhausted allegations, if accepted, "would countenance a federal cause of action for mere unpleasantness." *Hartsell*, 123 F.3d at 773. We are reluctant to expand a hostile work environment claim in this way, especially where the conduct at issue, such as being ordered out of an office, is not uncommon in the employment setting.

A Title VII plaintiff can of course exhaust administrative remedies if a reasonable investigation of his administrative charge would have uncovered the factual allegations set forth in formal litigation. *Bryant*, 288 F.3d at 132; *Dennis*, 55 F.3d at 156. Here, however, a reasonable investigation of discrete instances of supervisor misconduct not involving name calling could not be expected to lead to a continuous pattern of nonsupervisory misconduct which did involve name calling. The administrative charges could hardly have led to an investigation of Chacko's coworkers, because when coworkers are referenced in the in-house complaints — they were apparently in the captain's office when Chacko was ordered out and were leaving work when Chacko was told to remain — they are portrayed in mostly benign capacities. Nor could investigation of the charges lead to the egregious remarks — Patuxent's EEOC coordinator and internal investigator testified that she had met with Chacko at least ten times to discuss his various in-house complaints, and he never raised the subject of national-origin epithets. In short, the administrative charges and the evidence at trial describe two different cases, and that is precisely the sort of disjunction that the administrative complaint process is designed to avoid.

The district court nevertheless concluded that name calling by coworkers was reasonably related to supervisor harassment because supervisors did not stop the name calling and laughed at it. That, however, is not the relevant comparison. Whether coworker name calling is reasonably related to supervisor acquiescence and inaction is immaterial because Chacko presented neither of these factual allegations in the administrative charges. The proper comparison is whether the main evidence advanced at trial — coworker name calling — is reasonably related to the allegations in the administrative charges — three specific confrontations with supervisors not involving national-origin slurs.

However liberally we construe the charges, we must answer this question in the negative. In light of the reasons stated above, the only way that the two could be reasonably related is if specific factual allegations couched in broad terms like "harassment" or "hostile treatment" could invariably encompass a limitless number of other factual worlds. We decline to interpret the exhaustion requirement so narrowly as to render it a nullity and undermine the purposes of fair noti-

fication, conciliation, and preservation of resources that Congress intended for it.[4]

B.

We have generally dismissed any claims in which the plaintiff has not exhausted his administrative remedies before bringing suit. *See, e.g.*, *Bryant*, 288 F.3d at 127-28, 132-33 (affirming dismissal of plaintiff's claim because, inter alia, its scope exceeded the scope of his administrative charge); *Sloop*, 198 F.3d at 149 ("[W]e conclude that [plaintiff] failed to exhaust her administrative remedies before the EEOC, and therefore dismiss her Title VII retaliation claim."); *Taylor*, 193 F.3d at 239 (same); *Evans*, 80 F.3d at 962-64 (same); *Dennis*, 55 F.3d at 151, 156-57 (same); *Lawson*, 683 F.2d at 863-64 (same). We accordingly dismiss Chacko's hostile work environment claim. Since Chacko has not cross-appealed those claims on which the district court granted summary judgment to Patuxent, the case must be dismissed as well.[5]

---

[4]*Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 200 n.19 (4th Cir. 2000), is not to the contrary. In *Conner*, allegations in the administrative charge that the plaintiff was treated differently in her "terms and conditions of employment" were reasonably related to most of her allegations at trial, which concerned such discriminatory conduct as lower pay, disparate training, extra work, and inferior job responsibilities. *Id.* at 185, 200 n.19. And *Conner*'s discussion of this issue in a single footnote never suggested that general allegations of "harassment," without more, would always be sufficient to exhaust administrative remedies.

[5]Chacko may be able to file an administrative charge with the EEOC that properly details a hostile work environment based on derogatory slurs by coworkers. We express no opinion on whether the Title VII time limitations would bar this charge, but note generally that these limitations are subject to equitable tolling. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.").

## V.

National origin discrimination in the American workplace contravenes our most deeply held values and casts a long shadow on our national pledge, embodied in Title VII, to rid our society of division and stereotype. The testimony at trial about the ugly treatment Chacko endured at Patuxent is cause for real concern. No employee should have to face such abuse. Congress, however, has specified procedures for handling these types of complaints in the hope that they would best promote Title VII's goals, and we cannot throw overboard the enforcement scheme that Congress has set forth. *See Chris*, 221 F.3d at 653. We therefore hold that Chacko failed to exhaust his administrative remedies with regard to his hostile work environment claim based on coworker national-origin epithets. Accordingly, the judgment below must be

*REVERSED*.