**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1815**

FENYANG AJAMU STEWART,

            Plaintiff - Appellant,

      v.

ANDREI IANCU,

            Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Leonie M. Brinkema, District Judge.  (1:16-cv-00213-LMB-JFA)

Argued:  October 30, 2018                          Decided:  January 8, 2019

Before GREGORY, Chief Judge, MOTZ and WYNN, Circuit Judges.

Reversed and remanded by published opinion.  Judge Wynn wrote the opinion, in which Chief Judge Gregory and Judge Motz joined.

**ARGUED:** Kevin Spencer Elliker, HUNTON ANDREWS KURTH LLP, Richmond, Virginia, for Appellant.  Dennis Carl Barghaan, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:** G. Zachary Terwilliger, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

WYNN, Circuit Judge:

This appeal arises from the district court's determination that Fenyang Ajamu Stewart ("Stewart") is required to wait longer than 180 days to commence a civil action under Title VII and the Rehabilitation Act after amending his initial administrative complaint before the relevant agency. But the text of Title VII, as well as the legislative context and purpose, plainly states that a claimant may commence a civil action 180 days from "the filing of the *initial charge*." 42 U.S.C. § 2000e-16(c) (emphasis added). We, therefore, reverse the district court and remand for further proceedings.

I.

Stewart worked as a patent examiner for the U.S. Patent and Trademark Office ("PTO"). He suffers from bulging discs in his lower back and radiculopathy, resulting from compression of his sciatic nerve, as well as post- and continuous-traumatic stress disorder. Because of these medical conditions, Stewart filed a reasonable accommodation request with the PTO in April 2014. Specifically, he requested that he not be required to (1) come into work at a specified, mandatory time; (2) report his work schedule to his supervisor; and (3) schedule his meetings before 12:00 p.m., as his pain medications caused morning grogginess. In addition, Stewart requested an ergonomic chair and keyboard, a standing desk, and a foot stool.

On September 19, 2014, the PTO granted Stewart's requests for the keyboard, standing desk, and foot stool. Stewart had already received an ergonomic chair by that point. Regarding his work schedule, the PTO determined that Stewart was already on the Increased Flexitime Program work schedule, which permitted him sufficient flexibility to

2

"work around any difficulties" and that Stewart's supervisor, when possible, would schedule meetings specifically designed for Stewart after 12:00 pm. However, the PTO denied Stewart's request not to report his work schedule to his supervisor, as such a request would unduly burden his supervisor and the agency's ability to oversee and administer Stewart's work.

Stewart filed a formal complaint with the PTO's Office of Equal Employment Opportunity and Diversity on July 14, 2015, challenging the PTO's denial of his request for accommodations, asserting a hostile work environment and discrimination, and alleging various claims of retaliation. Stewart amended this administrative complaint eight times. After each of these amendments, the PTO's Office of Equal Employment Opportunity and Diversity responded with a notice advising Stewart that (1) he may amend his formal complaint at any time before the investigation is complete, and any new claims "must be like or related to the claims raised" in the original complaint; and (2) he may "file a civil action in an appropriate United States District Court at any time after 180 days have passed from the date [he] filed [his] original complaint. 29 C.F.R. § 1614.407(b)." J.A. 114.

On February 29, 2016—more than 180 days after the filing of his original administrative complaint, but less than 180 days after the filing of several of the amendments—Stewart filed *pro se* a civil action in the District Court for the Eastern District of Virginia, alleging numerous violations of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Stewart's claims rested on the PTO's alleged failure to accommodate his

disabilities; a hostile work environment; reprisal for participating in protected Equal Employment Opportunity activity; disparate treatment discrimination on the basis of disability and failure to accommodate; and retaliation for requesting reasonable accommodation. Stewart later amended the complaint in April 2016, adding two counts.

The PTO filed a motion to dismiss, arguing that Stewart's suit was premature under both 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.407(b) because he had not exhausted his administrative remedies. According to the PTO, Stewart was required to wait to file a civil action until the conclusion of the agency's investigation period. That investigation period is extended when employees amend their administrative complaint to the earlier of 180 days after the last amendment or 360 days after the filing of the initial complaint. 29 C.F.R. §§ 1614.106(e)(2); 1614.108(f).

On March 17, 2017, the district court dismissed Stewart's case without prejudice for lack of subject matter jurisdiction. The district court held that Stewart had failed to exhaust his administrative remedies because under Section 1614.407(b), he was required to wait until July 8, 2016, the earlier of 180 days after Stewart's last amendment or 360 days after the filing of his initial complaint, to file a civil action in federal court. Stewart timely appealed the district court's decision.

## II.

### A.

Stewart alleges violations of both the Rehabilitation Act and Title VII. Rehabilitation Act claims "must comply with the same administrative procedures that govern federal employee Title VII claims." *Wilkinson v. Rumsfeld*, 100 F. App'x 155,

4

157 (4th Cir. 2004). Section 717, codified at 42 U.S.C. § 2000e-16, amended Title VII to permit federal employees to file a civil action for employment discrimination under certain circumstances. Federal employees may file a civil action based upon their administrative complaint (1) within 90 days of receipt of notice of final agency action or (2) after 180 days from "the filing of the initial charge" with the agency, if there has been no final agency action on the complaint.

In addition to 42 U.S.C. § 2000e-16, federal regulations govern the process for filing a civil action based on employment discrimination. Congress has delegated to the Equal Employment Opportunity Commission ("EEOC") the authority to promulgate regulations to implement Title VII. *E.E.O.C. v. Randstad*, 685 F.3d 433, 444 (4th Cir. 2012). Accordingly, the EEOC has enacted regulations regarding individuals' ability to (1) amend their administrative complaint and (2) file suit in federal court under Title VII. These regulations reinforce Section 2000e-16. A federal employee may amend a complaint "at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint." 29 C.F.R. § 1614.106(d). Echoing the language of 42 U.S.C. § 2000e-16(c), the EEOC's regulations also state that federal employees seeking relief under Title VII and the Rehabilitation Act may file a civil action in federal district court "[a]fter 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken." 29 C.F.R. § 1614.407(b).

B.

We begin with the threshold question of whether Title VII's 180-day waiting period found in Section 2000e-16(c) is a jurisdictional bar, a question of first impression in this circuit.[1] Although the PTO filed its motion to dismiss under Fed. R. Civ. P. 12(b)(6), the district court dismissed Stewart's case under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction, stating that the "administrative exhaustion requirements for the Rehabilitation Act and Title VII claims are jurisdictional," and Stewart failed to exhaust his administrative remedies. J.A. 234 n.4. For the following reasons, we conclude that the district court incorrectly held that Section 2000e-16(c)'s 180-day waiting period is jurisdictional.

Title VII directs federal employees to exhaust administrative remedies before filing suit. *Pueschel v. United States*, 369 F.3d 345, 353 (4th Cir. 2004). Requiring exhaustion of administrative remedies serves twin objectives: protecting agency authority

---

[1] We have previously treated certain Title VII exhaustion requirements as jurisdictional—for example, filing a charge of discrimination with the EEOC, *see Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009)—but have never considered whether the 180-day waiting period in Section 2000e-16(c) is a jurisdictional prerequisite. We also recognize that circuits have split on whether the failure to exhaust administrative remedies under Title VII, broadly conceived, is a jurisdictional requirement. Again, however, none of these cases implicate the mandatory 180-day waiting period in Section 2000e-16(c) that is before us in this case. *Compare Peppers v. Cobb Cty.*, 835 F.3d 1289, 1296–97 (11th Cir. 2016) (treating the administrative exhaustion requirement as a jurisdictional prerequisite to filing a Title VII action), *with Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 385 (2d Cir. 2015) (holding that the failure to exhaust administrative remedies does not raise a jurisdictional bar); *Artis v. Bernanke*, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011) (same); *Frederique-Alexandre v. Dep't of Nat. & Envtl. Res. of Puerto Rico*, 478 F.3d 433, 440 (1st Cir. 2007) (same).

in the administrative process and "promot[ing] efficiency" in the resolution of claims. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). By avoiding the "premature interruption of the administrative process," exhaustion requirements ensure that agencies are provided the first opportunity to "exercise [] discretion" or "apply [] expertise." *McKart v. United States*, 395 U.S. 185, 193–94 (1969). The 180-day waiting period serves these purposes: it ensures that the employer is "put on notice of the alleged violations" to facilitate out-of-court resolution and permits sufficient, but finite, time for the agency to address the discrimination charges in the first instance. *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005). Indeed, courts have regularly characterized Section 2000e-16(c)'s 180-day waiting period as an exhaustion requirement. *See Murthy v. Vilsack*, 609 F.3d 460, 465 (D.C. Cir. 2010); *Brown v. Snow*, 440 F.3d 1259, 1263 (11th Cir. 2006).

However, it bears noting that the 180-day waiting period also is not a paradigmatic exhaustion requirement. Unlike most administrative exhaustion requirements premised on agency action, after which injured parties may "seek review of an adverse decision and obtain a remedy" if warranted, the 180-day waiting period is satisfied by agency *inaction*. *Darby v. Cisneros*, 509 U.S. 137, 144 (1993) (citation omitted). Indeed, Congress passed Section 2000e-16(c) of Title VII in 1972 precisely because of its recognition that federal employees frequently encountered an "administrative quagmire" in filing charges of discrimination. H.R. Rep. 92–238, at 12 (June 2, 1971). The 180-day waiting period therefore "confines agencies and the EEOC to a tight schedule" and signals congressional recognition that "the doctrine of exhaustion of remedies . . . had become [a] barrier to meaningful court review." *Wilson v. Pena,* 79 F.3d 154, 167 (D.C.

7

Cir. 1996) (quoting *Grubbs v. Butz*, 514 F.2d 1323, 1328 (D.C. Cir. 1975)). In light of this legislative context, the 180-day waiting period functions more like a mandatory procedural hurdle for litigants than an affirmative agency step potentially giving rise to a remedy on review.

This distinction informs our consideration of whether Section 2000e-16(c)'s 180-day waiting period requirement is also a jurisdictional requirement. Not all exhaustion requirements are jurisdictional. Rather, we have recognized that certain exhaustion requirements may be jurisdictional while others are not. For example, in *Davis v. North Carolina Department of Correction*, we specifically distinguished one exhaustion requirement as jurisdictional—the entitlement to a right-to-sue letter from the EEOC—from Title VII's "timely filing requirements," which the Supreme Court has held are not jurisdictional. 48 F.3d 134, 140 (4th Cir. 1995) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)); *see also Laber v. Harvey*, 438 F.3d 404, 429 n.25 (4th Cir. 2006) (concluding that the 90-day time limit set forth in 42 U.S.C. § 2000e–16(c) is not a jurisdictional requirement).

In recent years, the Supreme Court repeatedly has cautioned courts not to "confuse[] or conflate[]" subject-matter jurisdiction, on the one hand, with the "essential ingredients of a federal claim for relief," on the other. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 503 (2006). Applying this distinction, the Supreme Court has differentiated between non-jurisdictional "claim-processing" rules and jurisdictional rules that govern a court's adjudicatory authority. *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004); *see also Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (pressing a "stricter distinction" between these two

8

categories of rules).  In particular, the Supreme Court has clarified that most time bars are "quintessential claim-processing rules," which "promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011) (holding that a statute requiring filing of notice of appeal within 180 days of administrative decision constituted a "claim-processing rule" and therefore was not jurisdictional).  Such rules do not strip a court of judicial authority to hear a case, even when the time limits are "framed in mandatory terms."  *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1632 (2015) (holding that certain timely filing provisions in the Federal Torts Claims Act were not jurisdictional).

Instead, the Supreme Court has established a clear statement rule for determining whether procedural rules, including time bars, are jurisdictional.  Only if the statutory text "plainly show[s] that Congress imbued a procedural bar with jurisdictional consequences" should a court treat a rule as jurisdictional.  *Id.*  Put otherwise, Congress must explicitly "tag" a procedural bar "as jurisdictional."  *Id*.  In conducting this clear statement inquiry, the Supreme Court has looked to several factors, including the statutory text (if it speaks in "jurisdictional terms"); the placement of the rule (if it is located in the jurisdiction-granting provision of the statute); and legislative context.  *Henderson*, 562 U.S. at 438.

Here, Congress has done nothing to "tag" as jurisdictional the 180-day waiting period.  The text of Section 2000e-16(c) addresses only the timeliness of claims; it does not refer to the district courts' "authority to hear untimely suits."  *Kwai Fun Wong*, 135 S. Ct. 1625, 1628 (2015).  Much like the filing deadline at issue in *Henderson*, Section

9

2000e-16(c) does not contain "jurisdictional language"—language dictating that judicial review be obtained within a prescribed time and manner before a particular court. *Henderson*, 562 U.S. at 438. Simply because the 180-day waiting period is "cast in mandatory language" does not render it jurisdictional. *Id*. at 439.

In addition, Section 2000e-16(c)'s placement within Title VII is distinct from those provisions pertaining to jurisdiction. Section 2000e-16(c), titled "Employment by Federal Government," lays out the respective 90-day filing period and 180-day waiting periods before stating that the federal employee "may file a civil action *as provided in section 2000e-5*." 42 U.S.C. § 2000e-16(c) (emphasis added). Section 2000e-5, titled "Enforcement provisions," mandates that federal district courts "shall have jurisdiction of actions brought under this subchapter." 42 U.S.C. § 2000e-5(f)(3). These statutory sections serve different functions: on the one hand, Section 2000e-16(c) extends Title VII protections to federal employees, and on the other, Section 2000e-5, as the enforcement provision, prescribes jurisdictional requirements. Nothing "conditions the jurisdictional grant [in Section 2000e-5(f)(3)] on the limitations periods [in Section 2000e-16(c)], or otherwise links those separate provisions." *Kwai Fun Wong*, 135 S. Ct. at 1633; *see also Gad v. Kansas State Univ.*, 787 F.3d 1032, 1038 (10th Cir. 2015) (noting that "a Title VII statutory requirement's classification as jurisdictional or non-jurisdictional turns in large part on whether it is located in Title VII's jurisdictional subsection—42 U.S.C. § 2000e-5(f)(3)). This division further supports a conclusion that the 180-day waiting period is not a jurisdictional requirement but rather a "prudential prerequisite to suit," *Davis v.*

10

*Fort Bend Cty.*, 893 F.3d 300, 305 (5th Cir. 2018), or "statutory precondition," *Vinieratos v. U.S. Dep't of Air Force*, 939 F.2d 762, 768 n.5 (9th Cir. 1991).

In considering this issue, we emphasize the subtle, but important, distinction between those exhaustion requirements that operate as a jurisdictional bar and those that merely function as a statutory prerequisite to filing suit under Title VII. *See Vinieratos*, 939 F.2d at 768 n.5 (9th Cir. 1991). Because we conclude that Section 2000e-16(c)'s 180-day waiting period is akin to a "claim-processing" rule that imposes procedural obligations on litigants, rather than implicates judicial authority to hear a class of cases, we hold that the 180-day waiting period is not jurisdictional.

Our holding also prevents the "drastic" consequences of treating a procedural rule as jurisdictional—consequences that "alter[] the normal operation of our adversarial system." *Henderson*, 562 U.S. at 434. Jurisdictional defects can be raised at any time by the parties or sua sponte by the courts, even post-judgment, which may result in the "waste of judicial resources and may unfairly prejudice litigants." *Id*. Because of the gravity of a jurisdictional label, the Supreme Court has repeatedly and explicitly demanded "discipline" in this inquiry. *Id*. at 435.

To be clear, we do not hold that all exhaustion requirements set forth in Title VII are non-jurisdictional. Rather, whether a particular exhaustion requirement—in Title VII or any other statute—is jurisdictional turns on the statutory language and purpose of the exhaustion provision at issue. Here, Section 2000e-16(c) includes no language clearly indicating that Congress intended for the provision to serve as a jurisdictional bar. Further, in practice, Section 2000e-16(c)'s 180-day waiting period functions more closely

11

as a "time prescription," which imposes a mandatory obligation on litigants but does not govern a court's jurisdiction. *Arbaugh*, 546 U.S. at 510; *see also Stroy v. Gibson,* 896 F.3d 693, 698 (5th Cir. 2018) (treating Section 2000e-16(c)'s 180-day waiting period as a "precondition to filing suit," not a jurisdictional requirement).

Accordingly, the district court erred in dismissing this case under Federal Rule of Civil Procedure 12(b)(1). Instead, it should have considered the 180-day waiting period as a non-jurisdictional rule and decided the case under Federal Rule of Civil Procedure 12(b)(6).

III.

A.

Having determined that Section 2000e-16(c)'s 180-day waiting period is not jurisdictional, we now turn to whether the district court erred in dismissing Stewart's action under that provision. "We review de novo the grant of a motion to dismiss for failure to state a claim [under Rule 12(b)(6)]. In so doing, we must accept as true all of the factual allegations contained in the complaint." *Gerner v. Cty. of Chesterfield, Va.*, 674 F.3d 264, 266 (4th Cir. 2012) (citation omitted).

Stewart's appeal requires us to construe the statutory language of Section 2000e-16(c), and that provision's 180-day waiting period, in particular. When construing a statute, we "first and foremost strive to implement congressional intent by examining the plain language." *Minor v. Bostwick Laboratories, Inc.*, 669 F.3d 428 (4th Cir. 2012) (citation omitted). "[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Kennedy v. St. Joseph's Ministries, Inc.*,

12

657 F.3d 189, 192 (4th Cir. 2011) (citation omitted). In interpreting the plain language of the statute, we also look to "the specific context in which the language is used, and the broader context of the statute as a whole," *Minor*, 669 F.3d at 434–35 (citations omitted), as well as a statute's legislative history as additional evidence of congressional intent, *Elm Grove Coal Co. v. Director, O.W.C.P.*, 480 F.3d 278, 293 (4th Cir. 2007). Here, each of these factors indicates that Stewart's amendments of his complaint did not restart the 180-day clock.

We begin with the plain language of the statute. In relevant part, Section 2000e-16(c) permits aggrieved federal employees to file a civil action 180 days "from the filing of the *initial charge* with the department, agency, or unit" if the agency has "fail[ed] to take final action on his complaint." 42 U.S.C. § 2000e-16(c) (emphasis added). Given the ordinary meaning of the word "initial," Section 2000e-16(c) requires that the 180-day waiting period begin upon the filing of the *first, original* charge. *See* Webster's Third New Int'l Dictionary 1163 (3d ed. 1976) (defining "initial" as "of or relating to the beginning; marking the commencement"); American Heritage Dictionary of the English Language 902 (4th ed. 2009) (defining "initial" as "of, relating to, or occurring at the beginning; first"). Therefore, in Stewart's case, the 180-day waiting period began on July 14, 2015, the date he filed his "initial," formal administrative complaint of discrimination and retaliation before the PTO's Office of Equal Employment and Diversity.

The statute's use of the modifier "initial" also implicitly allows for the possibility of subsequent amendments—that there may well be additional "charge[s]" that follow the "initial charge." Accordingly, the 180-day waiting period does not reset upon subsequent

13

amendments to the administrative complaint. Had Congress not contemplated the possibility of amendments to the complaint, there would have been no reason to use the word "initial." *See Alaska Dep't of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 489 n.13 (2004) (observing it is "a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant") (citations and alterations omitted). Therefore, we hold that upon the passage of 180 days from the filing of the original complaint, and absent agency final action on the complaint, federal employees may file a civil action, regardless of subsequent amendments to that complaint.[2]

Turning to the legislative context, Congress passed Section 2000e-16(c) of Title VII in 1972 because of its recognition that aggrieved federal employees did not have sufficient access to the courts under Title VII. S. Rep. 92–415 at 16 (1971). Before the 1972 Act, the "effective availability of either administrative or judicial relief" for federal employees was uncertain. *Brown v. General Servs. Admin.,* 425 U.S. 820, 825 (1976). Federal employees often faced an "administrative quagmire" in which parties had to wait several years in the overburdened administrative process. H.R. Rep. 92–238, at 12 (June

---

[2] In an unpublished per curiam opinion, we summarily affirmed a district court's holding that federal employees must wait beyond the 180-day period when they amend their complaints. *Laber v. Harvey*, No. 1:05-cv-00803-CMH, 2005 WL 3008510, at *1 (E.D. Va. Nov. 7, 2005), *aff'd*, 204 F. App'x 332 (4th Cir. 2006). We are not bound by that opinion, which is devoid of reasoning. *See Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006) (noting that "we ordinarily do not accord precedential value to our unpublished decisions" and they are "entitled only to the weight they generate by the persuasiveness of their reasoning") (citation omitted).

2, 1971). Ensuring that federal employees had "access to the courts" therefore drove the passage of Section 2000e-16(c). S. Rep. No. 92–415, at 16 (1971). The 180-day waiting period directly serves that end. In discussing Section 2000e-16(c)'s 180-day waiting provision in the context of EEOC inaction, the D.C. Circuit observed that:

> The 180 day [waiting period] provision represents a Congressional determination that providing prompt access to the courts in discrimination disputes is so important that the administrative process will be given only a finite time to deal alone with a given dispute. Indeed, the Act is in part a response to Congressional realization that "the doctrine of exhaustion of remedies . . . had become [a] barrier to meaningful court review."

*Wilson*, 79 F.3d at 167 (quoting *Grubbs*, 514 F.2d at 1328). Allowing agencies to repeatedly delay individuals' ability to go to court, simply because they have amended their administrative complaints, would frustrate a "congressional policy to make the courts the final tribunal for the resolution of controversies over charges of discrimination after all administrative remedies have been exhausted." *Koger v. Ball*, 497 F.2d 702, 706 (4th Cir. 1974). Although Section 2000e-16(c) "provides for a careful blend of administrative and judicial enforcement powers," we cannot overlook that, in passing the provision, Congress intended federal employees to have a robust judicial remedy, and ready access to the courts, for employment discrimination claims. *Brown*, 425 U.S. at 833

Our conclusion also comports with the broader purpose of Title VII as a "remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process." *Sydnor*, 681 F.3d at 594 (citation omitted); *see also Alvarado v. Board of Trustees of Montgomery Community College*, 848 F.2d 457, 460 (4th Cir. 1988) ("Title VII does not

require procedural exactness from lay complainants."). We must be wary of "overly technical concerns" laying a "tripwire for hapless plaintiffs." *Syndor*, 681 F.3d at 594. Here, for example, the PTO repeatedly informed Stewart, after each of his amendments—and in accordance with the statute's plain language—that he could file a civil action "at any time after 180 days have passed from the date [he] filed [his] original complaint." J.A. 114. Permitting the agency to repeatedly confuse litigants in this manner would only further pervert Title VII's remedial purpose.

B.

In support of its position that Stewart was required to wait beyond the initial 180-day waiting period, the PTO makes several arguments. First, the PTO argues that Section 2000e-16(c)'s statutory text is "ambiguous" because it uses two different terms, "complaint" and "charge." Second, the PTO argues that the EEOC's regulations support tethering the 180-day waiting period to the agency's extended investigation period for amended complaints. Third, the PTO argues that should we reverse the district court's holding, we would incentivize gamesmanship in Title VII claims. Each of these arguments is unavailing.

In support of its first argument—that Section 2000e-16(c)'s statutory text is ambiguous[3]—the PTO emphasizes Congress's use of two terms within the statute:

---

[3] In repeatedly referring to Section 2000e-16(c)'s purported "ambiguity," the PTO appears to be implicitly invoking, or at least evoking, *Chevron* deference to its interpretation of the statute. However, the statute is not ambiguous. Further, we only grant *Chevron* deference to "an agency's construction of the statute which it administers." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (Continued)

"complaint" and "charge." The PTO argues that the term "complaint" in Section 2000e-16(c) references "an employee's general use of the administrative process" to allege unlawful discrimination, while the phrase "initial charge" is "the first 'statement'" through which an employee identifies this discrimination. Appellee's Br. at 25–26. To the PTO, it bears significance that Congress did not use the phrase "initial *complaint*" in Section 2000e-16(c) but rather "initial *charge,*" thus indicating that "Congress did *not* seek to trigger the 180-day period upon the commencement of the EEO process generally." Appellee's Br. at 26 (emphasis in original).

Even if we were to accept the PTO's proposed distinction between these two terms, such a distinction does not aid the PTO's position. If we treat "initial charge" as the first, informal "statement" through which an employee alleges unlawful discrimination, then the 180-day waiting period would be satisfied at the same time or *earlier* than under the reading we adopt because a "charge," so conceived, never temporally follows a "complaint." Under the PTO's construction, Stewart's "initial charge" occurred on April 30, 2015, when he submitted a document to the PTO's Office of Equal Employment Opportunity and Diversity alleging harassment and discrimination on the basis of disability. Accepting the PTO's position, then, would only hasten the date upon which Stewart could file a civil action. More significantly, PTO's position in no

---

(1984). The EEOC, not the PTO, administers Title VII, so even if *Chevron* deference were implicated here, the PTO is entitled to no such deference. The record includes no indication that the EEOC concurs in the PTO's construction of Section 2000e-16(c).

17

way explains Congress's express use of the word "initial," which serves as the crux of our construction of Section 2000e-16(c)'s 180-day waiting period. The term "initial" makes clear that Congress intended to begin the 180-day waiting period from the filing of the original complaint, regardless of whether subsequent amendments to that complaint are filed. *See United States v. Blannon*, 836 F.2d 843, 854 (4th Cir. 1988) ("[A] court may not manufacture an ambiguity in order to defeat Congress' intent.").

Next, the PTO argues that the EEOC's relevant regulations support its position that Stewart was required to wait longer than 180 days before filing suit. However, we conclude that these regulations only reinforce our interpretation of Section 2000e-16(c). 29 C.F.R. § 1614.407(b) mirrors the language found in Section 2000e-16(c), providing in relevant part that a complainant is authorized under Title VII and the Rehabilitation Act to file a civil action in federal district court "[a]fter 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken." Given the regulation's use of the term "individual . . . *complaint*," the PTO cannot dispute that the 180-day waiting period begins upon filing of the individual complaint. Instead, the PTO attempts to wave away the regulation as a "generic rule," but this perfunctory argument is not persuasive. Appellee's Br. at 29.

The district court, and the PTO, wrongly tether Section 1614.407(b)'s 180-day waiting period to other EEOC regulations extending the agency investigation period when a complaint has been amended to "within the earlier of 180 days after the last amendment to the complaint or 360 days after the filing of the original complaint." 29 C.F.R. §§ 1614.106(e)(2), 1614.108(f). The district court reasoned that otherwise, the

court "would be adjudicating claims that the [PTO] has not yet had the opportunity to investigate, let alone adjudicate." J.A. 236. We disagree for two reasons.

First, as discussed above, the district court's holding is contrary to the plain language of both Section 2000e-16(c) of Title VII and 29 C.F.R. § 1614.407(b). Further, Section 1614.407(b) lacks any textual distinction between filing an initial complaint and filing an amendment, which is particularly telling given that other regulations in the same part, such as those governing the agency investigation period, *do* make such a distinction. *See* 29 C.F.R. §§ 1614.106(e)(2), 1614.108(f). Section 1614.407(b) does not hinge employees' ability to file a civil action on the conclusion of the agency investigation; rather, it establishes a bright-line 180-day waiting period after which the employee can be "assured of having reasonably prompt access to the courts." *Wilson*, 79 F.3d at 167 (D.C. Cir. 1996).

Additionally, the district court neglected an important facet of Title VII claims: we have long held that courts may in fact adjudicate claims not raised before the agency, if certain requirements are met. In *Hill v. Western Electric Company, Inc.*, we recognized the "generally accepted principle" that the "scope of a Title VII lawsuit may extend to 'any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case'" before the agency. 672 F.2d 381, 390 n.6 (4th Cir. 1982). Put otherwise, an "administrative charge of discrimination does not strictly limit a Title VII suit which may follow," and federal courts may still hear claims that the employee did not raise before the agency, as long as they are "like or related" and grow out of the allegations during the pendency of the case

19

before the agency. *Sydnor*, 681 F.3d at 594. Only "those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Chacko v. Patuxent Institution*, 429 F. 3d 505, 506 (4th Cir. 2005) (citation omitted); *see also Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000) ("If a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit."). Our precedent makes clear that plaintiffs, although circumscribed by their administrative complaints, are not wholly banned from raising claims for the first time before the district court, so long as they meet the requirements articulated in *Hill* and *Chacko*.

Nor is a plaintiff's ability to raise new claims before the district court cabined to the context of retaliation claims, as the PTO appeared to briefly suggest at oral argument. Oral Argument at 27:53–28:25 ("I don't think he can amend his complaint, [] unless it was for retaliation . . . because this Court's jurisprudence provides that in cases of retaliation, the exhaustion procedures and principles are a little bit different."). It is true that we have often addressed a plaintiff's ability to do so in the specific context of retaliation claims. *See Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992). Importantly, however, we have never held that the rule applies *exclusively* in the context of retaliation claims but rather that retaliation claims "receive extended flexibility" when being considered under the general rule referenced in *Hill*. *Clarke v. Richmond Behavioral Health Auth.*, No. 3:09CV743, 2011 WL 13274273, at *4 (E.D. Va. Aug. 10, 2011); *see*

20

*also Brown v. Runyon*, 139 F.3d 888 (4th Cir. 1988) (unpublished opinion) (noting that our precedent "presupposes both that a retaliation count in a Title VII lawsuit be 'related to' and have 'grown out' of the EEO charge while the administrative charge remained pending"). We have reasoned that retaliation claims constitute a subset of the general rule noted in *Hill*, because "retaliation claims almost always relate back to previously filed EEO charges, and, therefore, may be raised for the first time in district court without the requirement that a plaintiff have exhausted his administrative remedies." *Brown*, 139 F.3d at 888. Accordingly, retaliation claims represent the "inevitable corollary," but not the exclusive application, of the "generally accepted principle" articulated in *Hill*. *Id*. (quoting *Nealon*, 958 F.2d at 590). We have therefore left open the possibility that district courts may hear claims for the first time, beyond just retaliation claims, if they are "reasonably related to the original complaint" and "developed by reasonable investigation of the original complaint." *Chacko*, 429 F.3d at 506.

Indeed, other circuits have recognized the need to grant Title VII plaintiffs "significant leeway" in drafting administrative complaints, given their lack of technical expertise. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (citation omitted). Applying this principle of liberal construction, other circuits permit litigants to bring claims not specifically pressed before the agency if they are "like or reasonably related to those contained in the [agency] complaint" and if they "reasonably could have developed from the [agency's] investigation of the charges before it." *Sommerfield v. City of Chicago*, 863 F.3d 645, 648 (7th Cir. 2017); *see also Foster v. BNSF Ry. Co.*, 866 F.3d 962, 966 (8th Cir. 2017) (holding same); *Freeman v. Oakland Unified Sch. Dist.*,

21

291 F.3d 632, 636 (9th Cir. 2002) (same). We join these circuits today in reiterating our decision in *Hill* and *Chacko* that plaintiffs may bring Title VII claims for the first time before a district court, so long as they are like or reasonably related to charges in the original administrative complaint, and if they reasonably could have developed from the agency's investigation of the original complaint. *See Hill*, 672 F.2d at 390 n.6; *Chacko*, 429 F.3d at 506.

Crucially, this "like or related" limitation also allays the PTO's third argument regarding gamesmanship. The PTO argues that should we reverse the district court, a federal employee could file a "perfunctory initial 'charge,' seek to add new claims immediately before the 180-day 'mark,' and then file a civil action immediately following that same 'mark.'" Appellee's Br. at 28. First, as discussed above, we already permit courts to adjudicate reasonably related claims not heard in the first instance by agencies. The "like or related" limitation limits the universe of charges that the litigant may bring and guards against the gamesmanship concern that litigants will raise wholly unrelated claims for the first time before a district court.

Second, as Stewart correctly points out, existing procedural guardrails further protect against such gamesmanship. When amending a complaint before the agency, the employee must file a letter with the agency's Office of Equal Employment Director "describing the new incident(s) and stating that s/he wishes to amend his/her complaint to include the new incident(s)." EEOC Mgmt. Directive 110, Ch. 5.B. The Director must then review this request to determine if the claims are like or related, and "whether a fair and impartial investigation of the new claims can be accomplished within 360 days of the

22

original filed complaint." *Id.* If not, then the individual must start a new administrative process with respect to the new claim. Accordingly, employees cannot game the administrative process in the way suggested by the PTO. Indeed, if we were to accept the district court's holding, we may even risk disincentivizing plaintiffs from bringing a "like or related" claim before the agency, as each amendment would only further delay the plaintiff's access to court. Under the district court's reading of 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.407(b), a plaintiff might be better served by holding onto their "like or related" claims until the filing of a civil action. But this outcome would undermine the policy goals underlying Title VII's administrative framework to encourage "quicker, less formal, and less expensive resolution of disputes." *Sydnor*, 681 F.3d at 593 (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)).

Our holding maintains the careful balance between the Title VII's administrative framework and judicial remedies, between "providing notice to employers and the [agency] on the one hand and ensuring plaintiffs are not tripped up over technicalities on the other." *Id.* at 594. We recognize the "substantial role" played by the administrative process in narrowing "formal litigation." *Chacko*, 429 F.3d at 509. But it is equally well-established that if the claim raised for the first time before the district court contains factual allegations that "are reasonably related to the factual allegations in the formal litigation, the connection between the charge and the claim is sufficient." *Id*. (citation omitted); *see also Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001) (noting that a plaintiff may pursue a claim not explicitly included in an administrative complaint if the allegations are "like or reasonably related to" those in the charge).

23

\* \* \* \* \*

The plain text of 42 U.S.C. § 2000e-16(c) and 29 C.F.R. 1614.407(b), as well as the legislative context and purpose of Title VII, dictate the outcome of this case. Contrary to the district court's holding, Section 2000e-16(c)'s 180-day waiting period operates independently of the agency's extended investigation window for amended complaints. Instead, the 180-day waiting period "gives great weight to the complainant's interest in obtaining speedy resolution of the complaint" and ensures ready access to the courts. *Wilson*, 79 F.3d at 167. Accordingly, we hold that Section 2000e-16(c)'s 180-day waiting period for filing a civil action, absent agency final action, commences with the filing of the initial administrative complaint, regardless of subsequent amendments to that complaint.

## IV.

For the foregoing reasons, we reverse the district court's dismissal of Stewart's amended complaint and remand for further proceedings.

*REVERSED AND REMANDED*

24